JOHN J. BERRY, JR., GEORGE H. MILLER, CHARLES DUERR, SAMUEL R. BLAINE, NATHANIEL W. FRANZBLAU, VICTOR J. SALERMO, JOSEPHINE H. PHILLIPS, THEO-DORE R. INGE, HARVEY G. STEVENSON, HENRIETTA KASEN, JOSEPH MELILLO, DUDLEY E. GARRABRANT, DAVID H. JONES, FRANKLIN CONKLIN, 3d., A. LESLIE PRICE AND HELEN M. CRAVEN, PETITIONERS, v. RUS-SELL C. GATES, COUNTY CLERK OF THE COUNTY OF ESSEX, RESPONDENT.

Argued August 24, 1942—Decided August 28, 1942.

For the petitioners, *James R. Giuliano.*

For the respondent, *Arthur T. Vanderbilt* (*G. Dixon Speakman*).

COLIE, J.   John J. Berry, Jr., and fifteen other individuals filed a petition with the Supreme Court, praying:

"1. That a Writ of *Mandamus* may issue out of and under the seal of this Honorable Court directed to the said Russell C. Gates, County Clerk of the County of Essex, commanding and enjoining him to certify the names of petitioners as properly endorsed in petitions filed in his office to the munici-pal clerk of each municipality in the County of Essex speci-fying in such certificate that the petitioners belong to the Republican Party, and further, commanding and enjoining him in drawing the specifications for the printing of the official ballots to place therein the names of your petitioners pursuant to the statutes in such case made and provided.

"2. That if the Court should determine that the proceed-ings and the order of the said Arthur Tench or the County

Clerk of the County of Essex should be reviewed by Writ of *Certiorari* issued out of this court that such a Writ issue for the purposes aforesaid."

The facts disclose that a petition addressed to the County Clerk of Essex County, signed by the requisite number of qualified voters, was filed in the office of the County Clerk on August 6th, 1942. This petition set forth the names and addresses of twelve persons desiring to run for nomination as members of the General Assembly; one for County Supervisor, three for members of the Board of Chosen Freeholders of Essex County. Two days thereafter, on August 8th, the sixteen persons named in the aforementioned petition signed a paper declining the nomination and requesting that their names be not printed on the Republican ballot for the primary election to be held on September 15th, 1942. This declination was filed in the office of the county clerk on August 10th. On August 12th the three persons named in the petition as "Committee on Vacancies" filed a completely new slate. This instrument as filed on August 12th was defective in several respects, one of which was that it did not set forth "the residence and post office address of each person so endorsed." Furthermore it was defective because it was not sworn to by the three members of the committee. Nathan Kerber, the notary public who signed the jurat to the affidavit admitted under oath on August 17th, 1942, that he never administered the oath to James J. Cardell or Jean R. Toure, two members of the committee. This in face of the jurat attached thereto that both of the persons last named were sworn, and subscribed the affidavit before the notary public.

On or before August 17th a certificate of acceptance, amended and supplemental certificate of nomination and affidavit of the three mmbers of the "Committee on Vacancies" were filed which, if effective, would appear to have corrected all prior irregularities and defects in the proceedings. A determination as to the efficacy of the attempted amendments is called for.

The legislature has granted broad powers of amendment in the General Election Law. *R. S.* 19:13-13 reads:

"Amendment of defective petitions; time for. A candidate whose petition of nomination, or any affidavit or affidavits thereto, is defective, may cause such petition, or the affidavit or affidavits thereto, to be amended in matters of substance or of form as may be necessary, but not to add signatures, or such amendment or amendments may be made by filing a new or substitute petition, or affidavit or affidavits, and the same when so amended shall be of the same effect as if originally filed in such amended form; but every amendment shall be made at least twenty days before the election. This provision shall be liberally construed to protect the interest of candidates."

The applicability of the last-quoted statute is governed by the provisions of *R. S.* 19:23-58:

"Provisions of title applicable. Any provisions of this title which pertain particularly to any election or to the general election shall apply to the primary election for the general election in so far as they are not inconsistent with the special provisions of this title pertaining to the primary election for the general election."

Thus we must examine the legislative acts referring to primary elections to ascertain whether or not the defects and irregularities of the proceedings have been amended within the time allotted. As recently as April 28th, 1942, the law regulating primary elections was amended so that it now reads:

"19:23-12. The signers to petitions for "Choice for President," delegates and alternatives to national conventions, for Governor, United States Senator, member of the House of Representatives, State Senator, member of the General Assembly and any county office may name three persons in their petition as a committee on vacancies.

"This committee shall have power in case of death or resignation or otherwise of the person indorsed as a candidate in said petition to fill such vacancy by filing with the Secretary of State in the case of officers to be voted for by the voters of the entire State or a portion thereof involving more than one county thereof or any congressional district, and with the county clerk in the case of officers to be voted

for by the voters of the entire county, a certificate of nomination to fill the vacancy.

"Such certificate shall set forth the cause of the vacancy, the name of the person nominated and that he is a member of the same political party as the candidate for whom he is substituted, the office for which he is nominated, the name of the person for whom the new nominee is to be substituted, the fact that the committee is authorized to fill vacancies and such further information as is required to be given in any original petition of nomination.

"The certificate so made shall be executed and sworn to by the members of such committee, and shall upon being filed at least thirty-four days before election have the same force and effect as the original petition of nomination for the primary election for the general election. The name of the candidate submitted shall be immediately certified to the proper municipal clerks."

For the purposes of the present discussion the significant change lies in the last paragraph which changed the number of days prior to the election for filing a certificate of a "committee on vacancies." Prior to the amendment of 1942 a certificate of nomination to fill a vacancy could be filed up to seventeen days prior to the election and not thereafter. Then in 1942 an amendment was passed requiring that the certificate be filed thirty-four days prior to the election. Stated another way, the legislature doubled the time intervening between the filing of the certificate and the election. One must assume that there was a sufficient reason to prompt the change and that the legislature realized a need for additional time in order for the necessary mechanics prior to the primary election to be performed. If as is suggested, an amendment could be made until twenty days before the election as provided by R. S. 19:13-13, *supra,* then the result of the 1942 amendment merely amounts to changing the period that may lapse between the filing of the certificate from seventeen days before the election to twenty days. Such an insignificant result from the 1942 amendment is absurd and leads to the inescapable conclusion that the legislature

never intended that the time within which to amend a defective petition under the General Election Law should apply to the certificate of a "committee on vacancies."

Under the situation here presented, August 12th was the thirty-fourth day prior to the primary election and the proceedings judged as of that day, disclosed defects which justified the exclusion of the names of the aspirants from the ballot.

The relief prayed for is denied, with costs.